Thomas C. WARD and Shirley A. Ward, Plaintiffs,

v.

Glenn M. GRAY, a/k/a Glenn Gray, Barbara L. Gray, James Stevens and Audrey Stevens, Defendants and Third-Party Plaintiffs,

v.

John M. MERVINE, and Individual formerly occupying the status of Receiver of Taxes of Sussex County, Laurence E. Carey in his official capacity as Finance Director of Sussex County and as an official agent of Sussex County Council, the governing body of Sussex County, and Ralph E. Benson, John T. Cannon, Sr., Charles W. Cole, Oliver E. Hill and W. Howard Workman, as members of said Sussex County Council, Third-Party Defendants.

Superior Court of Delaware, Sussex.

Submitted Feb. 10, 1977.

Decided March 15, 1977.

Robert L. Halbrook and Battle R. Robinson of Wilson, Halbrook & Bayard, Georgetown, for plaintiffs.

Roy S. Shiels of Brown, Shiels & Barros, Dover, for defendants.

O'HARA, Judge.

Plaintiffs brought this action in ejectment pursuant to 10 Del.C. § 6701 to establish their title to Lot No. 11, Edgewater Acres Development, Baltimore Hundred, Sussex County ("Lot 11"). Plaintiffs assert that they are the record owners of said lot in fee simply absolute, entitled to full, immediate and exclusive possession thereof.

They also claim ouster by defendants Gray, et al., from Lot 11 on or about May 1, 1973 and continued unlawful possession and numerous acts of waste by defendants from that time on. Plaintiffs ask for a writ of Habere Facias Possessionem and damages for mesne profits and for waste.

Defendants seek dismissal, claiming title through a tax sale conducted by the Receiver of Taxes for Sussex County ("Receiver").

In chronological order, the facts appear as follows: On February 1, 1972, ownership of Lot 11 was in G. Lance Gilbert and his wife, P. Thomas Haddock, and John F. Perdew and his wife ("Gilbert, Haddock and Perdew"). On that date, pursuant to 9 Del.C. § 8771(b), the Receiver mailed out an itemized tax statement and notice that Lot 11 would be sold at tax sale April 13, 1972, if the taxes were not paid. This letter was sent to all the owners (Gilbert, Haddock and Perdew) by name but to only one address, that of Gilbert. The letter was subsequently returned, marked "Moved, Not Forwardable". No other letter was sent.

It appears that sometime before February 23, 1972, plaintiffs contracted with Gilbert, Haddock and Perdew to purchase Lot 11. On or around that date plaintiffs took possession of the property. Also around that time, defendant Gray, who occupied land bordering on Lot 11, contacted plaintiff Ward, more than once, expressing a desire to purchase the lot. No agreement, however, was made in this regard.

On April 13, 1972, a tax sale was held with respect to Lot 11. Defendants were high bidders at $760.00. August 24, 1972 Gilbert, Haddock and Perdew conveyed Lot 11 to plaintiffs for $11,500.00. The deed was recorded the same day. April 30, 1973, pursuant to 9 Del.C. § 8773, the tax sale of Lot. 11 was routinely approved by this Court and a deed to the lot given to defendants from Receiver. May 1, 1973 defendants ousted plaintiffs, remaining from then on in possession. This suit resulted. It appearing no factual issues remain to be determined, both sides have moved for summary judgment.

Plaintiffs assert that defendants' tax deed is invalid because of various alleged defects in Receiver's performance of the statutory procedure for tax sale. These defects, they contend, go to the very authority for the sale and to the adequacy of notice. The defects asserted include: failure to send notice to each of the three co-owners at his own address instead of the address of Gilbert alone; failure of the certificate required by 9 Del.C. § 8772 to list specifically that notice was posted upon Lot 11 itself; and failure to perform the various requisites of the tax sale procedure in their proper order in that advertising and notice-posting occurred prior to the filing and endorsement of the § 8771(c) certificate.

Where a tax sale is challenged following its confirmation by Superior Court two important policies compete. First, there is a public policy requiring that a good faith purchaser at a tax sale reach a point, one day, where he becomes assured of absolute title and the peace attendant thereto. Therefore, a deed acquired through a tax sale will usually not be questioned once confirmation and approval by Superior Court has taken place. Exemplifying this policy is *Robins v. Garvine*, 36 Del.Ch. 451, 132 A.2d 51 (1957), aff'd, 37 Del.Ch. 44, 136 A.2d 549 (1957). Generally then, minor procedural defects will be deemed cured by confirmation.

However, this policy must give way where there was no jurisdiction to conduct the sale due to fraud or failure to meet notice requirements. Sales without jurisdiction, or authority, are absolutely void and any resulting title is a nullity. *Harding v. Ja Laur Corporation*, 20 Md.App. 209, 315 A.2d 132 (1974); *MacKubbin v. Rosedale Memorial Park, Inc.*, 435 Pa. 374, 257 A.2d 587 (1969).

As to the first alleged defect, that of failure to comply with statutory notice requirements regarding the letter, it is clear that such allegation is of the seriousness and import challengeable even after confirmation. Certainly, the requirement of letter-notice is one of several statutory procedures designed to provide a property owner

his "day in court" before the occurrence of a tax sale. However, the question for this Court is not a determination of whether there was, in fact, notice, but rather whether there was satisfactory compliance with the statutory procedure. The letter-notice requirement is absolutely essential to establish authority to conduct the sale. Therefore, if letter-notice, as set out in 9 Del.C. § 8771(b), is totally absent vis-a-vis a particular property owner, then there can be no valid tax sale concerning that owner's interest.

Specifically, § 8771(b) provides that the Receiver

". . . shall deposit in the mail in a sealed wrapper sufficiently stamped, an itemized tax bill, together with a notice to the *taxable* that he will proceed to sell the lands and tenements of the taxable for the payment of the tax, *addressed to the taxable at his last known post-office address, if such can be reasonably ascertained.*" (Emphasis added).

■ Plaintiffs argue that according to this provision notice should have been mailed to Haddock and Perdew as well as to Gilbert. Defendants point out that the list of property owners, used by the County for the purpose of taxation, bears only the address of Gilbert and that it is apparently common Sussex County practice to mail letter-notice in this fashion where there are multiple owners. The Court, however, attaches no significance either to what particular address appears on the list or to the common practice. If it is clear that the import of the relevant statute is to mandate a different course of conduct, then it is this Court's task to apply that statute.

In discerning the meaning of § 8771(b), the Court must define "taxable" as it is used in the requirement that notice be sent "addressed to the *taxable* to *his* last known post-office address, if such can be reasonably ascertained" (emphasis added). The list of property owners, described above, shows that under a column marked "Taxable" appear the names of the various owners of the lands assessed for taxes. The names appear as they do on the correspond-

ing deeds. The list in effect when the tax at issue was due shows that for Lot 11, the names of Gilbert, Haddock and Perdew appear in the "Taxable" column. However, only one address, Gilbert's, appears. This is despite the fact that the deed, from which the names came, contains addresses for Haddock and Perdew as well.

Since the three names describe three individuals and not a corporation, company or some other entity, the court finds the listing of the three names under the column headed "Taxable" to indicate that each is the name of a "taxable". Indeed, this reading comports with the fact that each of the three, as an owner of Lot 11, has a liability for the taxes upon that property. The Court, furthermore, sees no justification for inferring an alternative plural meaning for the word "taxable".

The meaning of § 8771(b) appears clear. Letter-notice should have been mailed to each "taxable at his last known post-office address". It was not. The addresses for Haddock and Perdew were available from the deed. Their addresses could, in other words, be "reasonably ascertained". Therefore, there was not satisfactory compliance with the essential statutory requirement of letter-notice as to the interests of Haddock and Perdew. The tax sale as to them is absolutely void.

What then of Gilbert's interest? As to him, the letter-notice requirement of § 8771 was satisfied. Still, a necessary result of determining that the tax sale as to Haddock and Perdew is void is that the entire tax sale of Lot 11 is grossly and fatally defective. The endorsed certificate is now almost wholly in error. The name of the taxable, the amount assessed and the description of what is being sold all have become incorrect as a result of the invalidity and resulting cancelling of the sale as to the interests of Haddock and Perdew. These defects, of course, were not apparent at the time of confirmation. Therefore, this Court finds that the entire tax sale of Lot 11 to defendants must be nullified.

It is true that plaintiffs were in the role of owners during part of the time prior to confirmation of the tax sale and could have complained of the sale's technical aspects or paid the taxes due, thus avoiding acquisition of title by defendants (see 9 Del.C. § 8773). However, they were under no legal duty to do so. It is important to differentiate between statutory notice from the Receiver to an owner of land as to an impending tax sale and notice of a defect in marketability of title. The law imposes no duty to perform title searches. Plaintiffs were, therefore, under no duty to discover the tax delinquency and no duty to pay or lose their property. Notice from the Receiver is not to be confused with constructive notice to plaintiffs of a cloud upon their title. It is, in fact, plaintiff's right to purchase property without checking for such a cloud; or, upon finding one, it is their right to purchase anyway. Moreover, notice of a null and void tax sale is notice of no cloud at all. Plaintiffs' knowledge, constructive or actual, of a tax sale void for lack of jurisdiction cannot cure such fatal defect. Plaintiffs are, therefore, entitled to have this Court scrutinize the tax sale at issue here and overturn it as defective.

In view of the Court's finding that the defective letter-notice invalidates the tax sale, no discussion is necessary of the other alleged defects. Plaintiffs must be restored to possession of Lot 11.

The Court is mindful that a question of damages is yet to be determined. The most immediate need, however, is for a decision as to where title lies. For that reason, the Court today renders judgment that title to Lot 11 is with plaintiffs. Decision is reserved as to damages pending further argument.

Summary judgment is granted in favor of plaintiffs and denied as to defendants' motion for summary judgment.

IT IS SO ORDERED.

ORDERED, by the Court of Appeals of